Association. And again, Mr. Davis. Yes, again, may it please the Court. In the case that is before the Court, the District Court denied two motions for sanctions that were filed against USAA. It denied two motions to dismiss the inequitable conduct counterclaims. It denied a motion to preclude discovery into the inequitable conduct issue. It denied a summary judgment motion seeking summary judgment of no inequitable conduct. Wait a minute. Wasn't there discovery about the inequitable conduct issue in the first case? There was. There was discovery. The judge denied the The District Court has told us that disputes about attorneys being shouldn't become a basis for an entire reopening of all the issues in the case. I mean, I don't understand why he had to allow additional discovery on inequitable conduct when you've already had it. I'm sorry. When you said in the initial case, are you referring to the The one we just had argued. Right. 2415. Yeah. So this is the same case. He just issued a subsequent attorney's order. Yes, I understand. I understand. But the point is that we're not supposed to have attorneys' fees disputes turn into another entire case. And I don't see why you're on what basis you can complain that you didn't get additional discovery on the attorney's fees issue when you'd already had discovery on inequitable conduct in the main case. I understand, Your Honor. I understand. And I did not mean to suggest that we were complaining that we didn't get discovery on the attorney's fees issue. My point is only that those facts coupled with the fact that during the bench trial in this case, the court held one of plaintiff's counsels in contempt at the end of the first day of trial, dealt with a motion for recusal, found as a fact on the record that counsel for the plaintiff had engaged in unethical behavior. What's unethical about representing witnesses? So I'm sorry. What is unethical about representing witnesses who potentially have an attorney-client relationship with the client? Standing alone, I don't think there's anything that's unethical about that at all. I think the concern that Judge Dumas had was that the counsel who was representing those witnesses was a witness himself and also worked for a firm that had a financial interest in this case. And so in the- What makes that unethical? Help me. Well, so I think the issue is that in the depositions when Mr. Nienstadt was instructing the witnesses not to answer specific questions and the witnesses stood on those objections and Judge Dumas, to the extent he did, later concluded that some of those objections were a witness in a way that he had a specific impact on his firm's financial bottom line and it deprived- What case says that's unethical? I don't have a case that says that's unethical. I do not. But in context, Your Honors, this is what I would say. I don't think that there is a Federal Circuit case that has addressed this specific issue yet, but in the Diet Goal Innovations case, which is a district court case from the Eastern District of Texas that was Senior Judge Bryson sitting by designation, the court held that a consideration of inequitable conduct can be considered as a part of the overall octane fitness analysis. Yes, sure, but you have to then show inequitable conduct to have that be part of the analysis and the trouble is that the district judge here found that there wasn't inequitable conduct and don't we have to respect those findings in connection with the attorneys' fees issue? You certainly have to respect those findings or at least give them deference. However, what the Diet Goal Innovations case says is that as a part of that analysis, it is sufficient to show by preponderance of the evidence for attorneys' fees purposes that inequitable conduct was likely rather than meeting the clear and condensing standard. Do we have to reopen the inequitable conduct issue because of a different standard of proof in connection with attorneys' fees? No, you don't have to reopen it at all, Your Honor. Judge Dumar, having heard the entire one-week trial and observed all the witnesses and finding in his opinion that an inference of inequitable conduct was extremely plausible, even though in his view there was an equally plausible one of incompetence, that he can consider that in determining whether an award of attorneys' fees is appropriate. Let me ask you this. Yes, Your Honor. The district court expressed surprise at JA 1173 that USAA didn't move to disqualify Mr. Meinstad, saying it would have been granted. Why didn't you move to disqualify counsel? Because it would have at least cleaned up a lot of this stuff. Your Honor, that's an excellent question. What I can tell the court is that USAA seriously considered that. Ultimately, the conclusion that our client came to was that Mr. Meinstad had acted as lead counsel the entire period of the case and had gone on far too long and that if the court had disqualified him, there would have been an even longer delay that would have prejudiced our client further. So that was the only reason that we didn't do it, Your Honor. And I will note, though, that when the court made that statement, the court already knew and we had already put Mr. Meinstad on our trial witness list. And so our client's thinking was the court will have an opportunity to observe the witness, and he did, and he made findings in that regard. So, Your Honor, we understand that the burden is high. We understand that the district judge gave at least a salutary nod to the law here. The one thing that we would say is that at pages 20 and 21 of his fee decision, he essentially says what his Honor Judge Steik just said, which is, I considered the issues on inequitable conduct, and I found that the burden wasn't met and granted the 52C motion. So now let me put that to the side and consider each of these other issues in isolation. We think that what the court should have done is consider the totality of the circumstances, particularly in light of the evidence that the court and the statements that the court made on the record, and it was error to not come to a different conclusion. The last point that I'll make is this, and then I'll sit down unless the court has questions. It is clear that the court was concerned in ruling on the fees motion with the experience level of plaintiff's counsel, and we would submit, we couldn't find a case that addressed this specific issue, but we would submit to Your Honors that the experience level of counsel should not be a part of the consideration for the Octane Fitness 285 analysis. That arguably is appropriate for a consideration of the quantum of fees, but the only question to be asked at this stage under the law is whether this case is one that stands out from others. If you want part of the City of Caliente District Court of Nevada, approximately 1993, in which I argued for the district court, I don't mind being outsmarted. There are a lot of lawyers in this town who are smarter than I am, but I hate being outdumbed. Your Honors, when we're looking at . . . Even if the district court found it wasn't the single most reasonable inference for inequitable conduct of fraud to get to inequitable conduct, couldn't he and shouldn't he have analyzed it under a different standard for 285 fees? Which is, just because it doesn't meet that standard, couldn't it still be sufficiently fraudulent to make this an exceptional case? No, Your Honor. First of all . . . Why not? It's a different standard, right? Theracense is not the same as Octane. Theracense is not the same as Octane, but Theracense laid down the rule you just articulated. It has to be the single most reasonable inference, and he found that wasn't the case here. But let's get back to what happened here. It was a failure to claim priority back through a chain of children to the grandparent. When we look at the specific intent to deceive, there's no value to failing to make that priority claim. No, no specific intent to deceive for 285 fees. Your Honor, what they're relying on for 285 fees is primarily their inequitable conduct claim. And for that, the judge decided after a five-day trial that he couldn't find in their favor, no matter what was presented by the plaintiff in this case. But let me ask you this. I think it's what your opposing counsel should have said, but am I correct that Mr. Neenstadt is a member of the Virginia Bar? He is, Your Honor. Doesn't Virginia Bar . . . Oh, I apologize, not a member of the Virginia Bar. Do you see? Yes. Okay. So he's not barred in Virginia? That's correct, yes. Where was the trial? It was in Virginia, Your Honor. Are you aware that Virginia State Bar Rule 3.7 prohibits lawyers from acting as an advocate in a case where the lawyer is likely to be a necessary witness? I am, Your Honor, but let's go to that point. It wasn't until the trial judge brought up this question about his limited representation of the prior attorneys that this was even an issue. This was the judge's position. USAA then latched onto that and stated that there was a problem. Now, you heard Mr. Davis state that they decided not to do it because it would interfere with trial, but I submit, Your Honor, the record reflects that this was a hard-fought case below. The gloves were off throughout the entire case. And that's not reflected on the record. When we look at the Virginia rules, we have to look at whether the limited representation would lead to, proposes an actual conflict or a potential conflict. Now, what they're... If that limited representation included, in effect, suborning perjury, that would be an actual conflict, wouldn't it? But there was no evidence that that happened in this case, Your Honor. What they're stating is that employers who are in a litigation cannot provide legal representation for former employees relating to the factual issues that they have knowledge of. That is not the law. That is not the case. And it is not an ethical violation to provide that limited representation. Also, what happened during the depositions and also at trial is each of these lawyers testified under penalty of perjury that they did not look at the priority claim, they were not asked to look at the inventor's priority claim that they made with their pro se filings, and that they had no intent to deceive the court when making the representations about priority based upon the record that was available before them. Let me take you to what we were discussing in the prior argument, which I said we'd come to now. In the blue brief at 24, there's a reference to the district court maintaining a hostility towards individuals of foreign origins, and that its conduct appeared to be exacerbated by senility. And that's in reference to a petition that was denied to the circuit and denied again to the circuit. I looked at the record testimony, and the district court indeed asked Mr. Ashgeri Kamouriani what country he came from. That's what he asked, right? That's your evidence of hostility towards people from foreign countries, is that right? Because that's the reference you give me. It is, Your Honor. It is, Your Honor. And that was after counsel had asked the following question. While English is not the witness's first language, Mr. Ashgeri Kamouriani, was he comfortable in testifying in English? And you think it indicates bias to ask what country are you from? Your Honor, it is one of the pieces of evidence and hearing transcripts that we provided in the case of Mandamus. What else did you give us to demonstrate bias against individuals of foreign origin, which is a very serious claim? That was the record cite that we pointed to, Your Honor, for that particular proposition. Now, as to senility, in the record at J1133, which is what you cite me to, the court below cites, you cite the district court's statement during trial that he better check Theracense out after he had already had it presented to him. That's correct? Yes, Your Honor. This was fully briefed during multiple motions and in summary judgment. And he expressed surprise during trial that he didn't understand the case law and asked that the parties provide it to him. So the judge forgot about a case? Your Honor, from the record, it looks like the judge has never reviewed the case despite So where are we on your forgetting all the record cites that I asked you about in the last case? Your Honor, I apologize for not having those record cites at the rating. Oh, I understand. But did they demonstrate senility?  I did not, too. I get your point, Your Honor. I absolutely get your point. With respect to this issue about attorney's fees, again, it's abuse of discretion. They're relying on inequitable conduct as the basis for it. As the district court heard five days of hearing the district court or testimony, the district court determined that there was no there there on this priority issue. And getting back to the underlying basis for their attorney's fees claim, it comes down to this question of a specific intent to deceive. Do you agree that Ms. Sher's, Esgari-Kamrani, offered conflicting claim constructions before the PTAB and the district court? Your Honor, we do not. Here's what happened. There's a broadest reasonable interpretation standard at the PTO. There is the Phillips standard at the district court. Now, in a particular filing, the CBM counsel unfortunately had errors in one of the articulations of the claim construction. When they listed it in other places of the brief, it was correct. That was the basis for their argument that it was contradictory and that the... And shifting. And shifting. That's right, Your Honor. But frankly, that was a mistake, unfortunately, made by counsel during the agency proceedings. And that was fully briefed before the court when it was brought up below. In the red brief at 49, you say that, quote, Magistrate Judge Leonard became frustrated with Defendant's counsel practice of litigating unnecessary motions, commenting that Defendant's counsel's motion practice seems designed to accomplish nothing more than increasing attorney's time in 3697. Where does it say motion practice at 3697? Your Honor, I'm not sure it says motions practice. And I suspect since you have the record in front of you, it may not say that. But I will say that the context was a motion that the judge was hearing. A motion, yes. Yes. So the judge was hearing a motion that had been brought and was reflecting on the serial motion practice in the problem that occurred. The problems that he saw from the practice. I didn't see anything about serial motion practice in that. I understand, Your Honor. The point I was... Is it somewhere else in the record? That particular point, the serial motions practice, no. What I'm trying to state, Your Honor, is that the judge entertained motions by... You can't just... I mean, when you cite the court to something, especially something as serious as this, you have to cite to an actual record site. And over and over again, you're telling me, well, it's not there. But this is how it looks. That's not what you do in front of the court. Your Honor, I apologize. What I'm trying to say is you have to look at the context of the discussion. We provided a record site relating to the judge's frustration that he stated about USAA's practice. It's in the context of the motion. That's the point that's made in the brief, and that is the point I'm attempting to make here, albeit not very well before, Your Honor. It's practice. You're characterizing it as it's practice. He's characterizing it as that motion. He is characterizing it as the motion that is before him, Your Honor. There are other judges who express frustration with motions as well. But this gets back to... Let's go back to the 10,000-foot level, because what this court is being asked to decide is the district court abused its discretion in denying attorneys' fees, looking at the totality of the circumstances, and also that it was abuse of discretion for the district court to decide that there was no specific intent to deceive under the Theracent standard, which requires that the most reasonable inference be that there was an intent to deceive the office, a specific intent to deceive the office. That has not been shown here, and what they're attempting to... You're arguing the last case. This... Well, we've... Unfortunately, Your Honor, been merging the cases together, but in essence, you know, I'm focusing on the attorneys' fees and equitable conduct, and if Your Honor wants to touch this issue again, I'll be happy to do so. I'm not at all sure that this should have been 45 on 45, but... I mean, minutes, you know, but... Unless the court has further questions, I'll... Okay. Mr. Davis, anything further? No, Your Honor, just one minor point, and that is that I did not hear Ms. Payton raise the issue of their cross-appeal until I assume that that's been waived. Okay. Thank you, Your Honor. Okay. Thank you, counsel. The case is submitted, and that brings us to our third case.